AFFIRMED, 4 *Zab.* 718. CITED *in State* v. *Trenton,* 7 *Vr.* 501.

---

## THE STATE v. THE FREEHOLDERS OF ESSEX.

1. The building of bridges is a discretionary power intrusted with the boards of chosen freeholders of the counties, who may decide whether a bridge ought to be built, or whether an ancient bridge ought to be rebuilt, and whether it should be rebuilt on the same, or a different place.

2. When the freeholders have in good faith decided according to their discretion, this court will not interfere by *mandamus* to compel them to a different course. *Quere.* Whether they might not, in case of an abuse of the power in evasion of its exercise?

This was an application, in the name of the state, by William O. Price and others for a *mandamus* to the board of chosen freeholders of the county of Essex, to compel them to

erect and rebuild a bridge in one of the public streets of the borough of Elizabeth, in the same place where it had formerly stood; it being alleged that they had caused or permitted the old bridge to be taken down from the place in the street or highway where it had stood for many years, and caused a new one to be erected in a different place, and partly without the line of the ancient public road or street.

A rule to show cause had heretofore been granted, and depositions had been taken under it. The facts of the case, touching the merits of this application, appear in the opinion of the court.

The rule to show cause was argued before NEVIUS and OGDEN, Justices.

*A. Whitehead* and *Williamson*, in support of rule; *J. J. Chetwood*, contra.

NEVIUS, J. At the last term of this court, a rule to show cause why a *mandamus* should not be awarded was granted, and also a rule to take affidavits on either side, and now, upon argument of the rule, the following case is presented : the relators, resident citizens of the county of Essex, complain that the defendants, " the board of chosen freeholders " of that county, have caused to be taken down and destroyed a certain stone bridge, which crossed the Elizabethtown creek, in and upon a public highway, which has existed and been used for more than half a century, and for refusing to rebuild the same, whereby the public are prevented from travelling upon said road and crossing said creek at the place they were before accustomed to do ; and that the travel on said road has thereby been diverted from its ancient track, to the prejudice of public interest and convenience. To this complaint the defendants answer, admitting that they caused the said bridge to be taken down, but alleging that they have caused to be erected in its stead another bridge, safer than the former, equally convenient for public use and travel, and better adapted to vent freely the waters of said creek.

The testimony taken under the rule, as well in support of, as against this motion, most clearly establishes these facts—

that the road in question, as it passes through Elizabethtown, is called Broad street; that it is an ancient public highway, and has been commonly used as such for more than sixty years; that this road, as it crosses the creek, diverged from a straight or direct course, and passed the creek, in an oblique direction, over an arched stone bridge, which connected Broad street, on the north side, with Broad street on the south side of the stream. A few years since a new street was opened on the south side of the creek, crossing it at right angles, and connecting with Broad street on the north side, in a straight line. Upon this new street the board of chosen freeholders were authorized, by act of the legislature, passed in 1848, to erect a bridge without a draw. This bridge has its northern abutment immediately joining the northern abutment of the old stone bridge; but, as it is built at right angles with the stream, its southern abutment is some 22 feet distant from the southern abutment of the old bridge. In the erection of the new bridge, the defendants resolved to take down the old one, and use its materials in the new construction, and also appropriated $2000 to the erection of the new bridge. In doing this, they have occasioned a necessary diversion of the travel from the old street or road, where it crossed the creek, and directed it, in a circuitous or elliptic course, over the new bridge, and connecting again with Broad street on the south, at a short distance from the creek.

These are the material facts presented upon the present application. The reasons assigned by the defendants in justification of their proceedings, and in answer to the motion, are—

1. That the old bridge was in a dilapidated condition, and had become unsafe and dangerous.

2. That a bridge on the new street would be, and now is of equal, if not greater public convenience, and better fitted for the passage of the water of the creek in times of freshets—and,

3. That the opening of the new street required the erection of a new bridge, and that the juxta-position of two bridges on these respective sites would, in all probability, be a serious impediment to the stream in time of high water.

The relators controvert these several positions, and deny the defendant's right to divert the travel from this highway, as they have done, by refusing to rebuild the old bridge at the place where it formerly stood, and ask a *mandamus* from this court to compel them to do so.   If the defendants are legally bound to rebuild this bridge, then the remedy here sought by *mandamus* is the proper one, for there is no other mode of effecting complete relief.   Upon this point, the law seems well settled in the cases reported in *Spencer* 659, 3 *Halst.* 205, and 3 *Har.* 108.

By the fourth section of the act incorporating the boards of chosen freeholders of the several counties, it is made their duty, among other things, at their annual or other meeting held for that purpose, to vote, grant, and raise such sum of money for the building or repairing of bridges as they may deem adequate for such purpose.   And, by the first section of the act respecting bridges (*Rev. Stat.* 535), it is provided, " that when it shall be necessary to erect or rebuild any bridge, the expense of which shall exceed $500, the overseer of the highway shall give notice to the director of the board of chosen freeholders, who shall thereupon convene the board for the purpose of considering and deciding upon the utility or necessity of erecting or rebuilding such bridge.

If the expense of erecting or rebuilding a bridge is less than $500, and more than $50, then the chosen freeholders of the three adjacent townships are authorized, if they *think proper*, to order such bridge to be built, rebuilt, or repaired.

Here is a discretionary power, most clearly conferred upon the board of chosen freeholders, to consider and determine, or decide, upon the utility and necessity of erecting or rebuilding bridges, and to raise such an amount of money as they may deem adequate for that purpose,   The law does not define under what circumstances or in what situations they may order the building or rebuilding of a bridge, but leaves it to their judgment and discretion.   And this discretion cannot be transferred upon the mere complaint of individuals, who may conceive themselves or their property injured or impaired for the want of a bridge, from the local tribunal where the law has

placed it, to this court, whose knowledge of the circumstances that ought to regulate such discretion must necessarily be limited and imperfect. It is true that, in cases where there is a clear and undeniable abuse of such discretion, as where the freeholders should refuse to build a bridge which was absolutely and essentially necessary for the enjoyment of an ancient highway by the public, this court may exercise its power in enforcing that duty. But where an inferior jurisdiction, vested with discretionary power to do or omit any particular act, has not been guilty of clear and manifest abuse, in the exercise of that discretion, a *mandamus* ought not to be granted, for this court cannot control, and ought not to coerce that discretion. 1 *Cow.* 417, *ex parte Nelson.*

Before we order a *mandamus*, therefore, we ought to be clearly satisfied that the defendants have abused their discretionary power in refusing to rebuild the bridge in question. I have carefully examined the depositions taken, and read in this case, and I cannot find in them any satisfactory evidence of such abuse. I assume it, as an undeniable principle, that where a bridge in a public highway has become dilapidated and unsafe, the board of freeholders may consider and decide whether necessity or public utility requires its rebuilding; and if so, that they are not bound to rebuild on the same site; but for good considerations, such as safety, convenience, or economy, may change the location, provided such change does not obstruct the public travel. The evidence here shows that the travel, which formerly passed over the old bridge, has been slightly diverted from the ancient track by means of the construction of that bridge, but has not been obstructed, for the new bridge affords equal facility in crossing the creek, and connects with the main road a short distance from the margin of the creek. It is true that some of the witnesses give it as their opinion that the alteration in the location of the bridge and road have, in some respects, incommoded a few individuals, but other witnesses have expressed contrary opinions, which are equally entitled to consideration. I cannot find, from the whole of the evidence, any satisfactory proof that the defendants have abused their discretion or violated their duty

in refusing to rebuild this bridge. And as the power to grant the *mandamus* is discretionary, and granting it in this case may be attended with great expense and some hardships after the cost already incurred, and as it seems to me that the end sought is rather to promote private, than public interest and convenience, I think the *mandamus* ought to be refused.

OGDEN, J., concurred.

CITED *in Livermore* v. *Freeholders of Camden,* 5 *Dutch.* 246.